[Crim. No. 16276. In Bank. July 24, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY GORDON CHAMBERS, Defendant and Appellant.

## COUNSEL

Richard 'J. Stall, Jr., under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Beverly K. Falk, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**WRIGHT, C. J.**—In a court trial defendant was found guilty of a violation of Penal Code section 211 (armed robbery). The court further found that in the commission of the offense defendant used a firearm within the meaning of Penal Code section 12022.5. His application for probation was denied, and he was sentenced to imprisonment in the state prison for the term prescribed by law for youthful offenders. (Pen. Code, § 1202b.)[1]

Defendant makes three contentions on appeal: (1) the trial court committed prejudicial error in denying a motion to withdraw a jury trial waiver; (2) section 12022.5 is inapplicable when the robbery of which a defendant is convicted is elevated to the first degree by the fact that defendant was armed (§ 211a); and (3) the minimum sentence provision contained in section 1202b for youthful offenders supersedes the cumulative minimum sentences provided for violation of section 211 with a finding of use of a firearm as described in section 12022.5. We agree only with defendant's final contention.

The facts of the case are essentially undisputed. At 2 a.m. on November 30, 1970, defendant, a man dressed in women's clothing, was standing on a public street. The victim solicited defendant to engage in an act of prostitution. Defendant entered the victim's vehicle, produced a gun which later

---

[1]All references are to sections of the Penal Code unless otherwise indicated.

was found to have been loaded, demanded and received the victim's money and ordered the victim to "drive around."

After driving a short distance the victim attempted to gain possession of the gun. Following a brief struggle with defendant the victim stopped his vehicle near two police officers, alighted and ran to them shouting that he was being robbed. The officers took defendant from the vehicle and arrested him.

The trial court impliedly found that defendant was armed with a deadly weapon thus elevating the robbery to the first degree. The court further and expressly found that defendant used a firearm in the commission of the robbery within the meaning of section 12022.5.

In pretrial proceedings defendant freely and intelligently waived his right to a jury trial.[2] (Cal. Const., art. I, § 7; *People* v. *Holmes* (1960) 54 Cal.2d 442, 443 [5 Cal.Rptr. 871, 353 P.2d 583].) When defendant appeared later that same day for trial defense counsel moved to withdraw the jury waiver stating only that defendant's brother opposed a court trial. The court denied the motion and proceeded to trial.

█ It is well established that a waiver of a jury trial, voluntarily and regularly made, cannot afterward be withdrawn except in the discretion of the court. (*People* v. *Osmon* (1961) 195 Cal.App.2d 151, 153, 154 [15 Cal.Rptr. 263]; *People* v. *Melton* (1954) 125 Cal.App.2d Supp. 901 [271 P.2d 962, 46 A.L.R.2d 914].) Absent special circumstances the court may deny a motion to withdraw such a waiver especially where adverse consequences will flow from the defendant's change of mind. In exercising its

---

[2]Defendant was advised as follows:

"The Prosecutor: Your attorney has just indicated to the Court that it is your desire to waive your right to jury trial, is that correct?

"The Defendant: Yes.

"The Prosecutor: Under the Constitution you have a right to go to a jury in this matter which means in California, through your attorney, you can assist in the selection of twelve people to sit and listen to the evidence and determine whether or not you are guilty. In order to convict you, all twelve would have to agree you are guilty, do you understand that?

"The Defendant: Yes.

"The Prosecutor: If you waive and give up that right, that means you would be having a Court trial, in which there would be no jury present to aid, assist, or confer with the Court, and the Judge alone makes a decision of whether or not you are guilty. Do you understand that?

"The Defendant: Yes.

"The Prosecutor: Do you waive and give up your right to a jury trial?

"The Defendant: Yes.

"The Prosecutor: Counsel join?

"Defense Counsel: Counsel joins.

"The Prosecutor: People accept and join in the waiver, Your Honor.

"The Court: All right. . . ."

discretion the court may consider such matters as the timeliness of the motion to withdraw the waiver, the reason for the requested withdrawal and the possibility that undue delay of the trial or inconvenience to witnesses would result from granting the motion.

■ Here the motion to withdraw the waiver was not timely. Neither are there special circumstances which would compel the court to grant the motion notwithstanding delay of the trial, inconvenience to the witnesses and potential prejudice to the People. Little or no weight should be given to the unexplained wish of defendant's brother for a jury trial. The denial of the motion to withdraw the jury trial waiver under these circumstances was clearly not an abuse of discretion.

Relying upon *People* v. *Floyd* (1969) 71 Cal.2d 879 [80 Cal.Rptr. 22, 457 P.2d 862], defendant next contends that he cannot be punished both for armed robbery (§§ 211 and 213)[3] and for using a firearm in the commission of the robbery (§ 12022.5).[4] As will appear, defendant's reliance is misplaced.

The application of statutes providing additional penalty for a defendant convicted of committing a crime under aggravated circumstances has long been a question of statutory interpretation. (See *People* v. *Floyd, supra,* 71 Cal.2d 879; *In re Shull* (1944) 23 Cal.2d 745 [146 P.2d 417].) Prior to the enactment of section 12022.5 the law provided increased penalties for defendants who were "armed" during the commission of felonies. This was accomplished by legislative provisions establishing higher degrees of crimes such as robbery or burglary committed while armed with a deadly weapon, by creating new crimes where deadly weapons were involved (i.e., assault with a deadly weapon), and by increasing the penalty for all felonies where the defendant was armed with a deadly weapon (§ 12022). By statutory interpretation, however, we were unable to discern a legislative intent that an increased penalty be imposed upon those who were armed with a deadly weapon during the commission of a crime where being armed was a neces-

---

[3]Section 213 provides: "Robbery is punishable by imprisonment in the state prison as follows: 1. Robbery in the first degree for not less than five years. . . ."

[4]Section 12022.5 provides: "Any person who uses a firearm in the commission or attempted commission of a robbery, assault with a deadly weapon, murder, rape, burglary, or kidnapping, upon conviction of such crime, shall, in addition to the punishment prescribed for the crime of which he has been convicted, be punished by imprisonment in the State prison for a period of not less than five years. Such additional period of imprisonment shall commence upon the expiration or other termination of the sentence imposed for the crime of which he is convicted and shall not run concurrently with such sentence. . . .

"This section shall apply even in those cases where the use of a weapon is an element of the offense."

sary element to a finding of the crime or of its degree. (*People* v. *Floyd*, *supra*, 71 Cal.2d 879; *In re Shull, supra*, 23 Cal.2d 745.)

In 1969 the Legislature, obviously to impose a greater deterrent upon those who resort to the use of a firearm in the commission of specified crimes, including robbery, and to overcome in part the problem upon which *Floyd* focused, enacted section 12022.5 to be applied "even in those cases where the use of a weapon is an element of the offense." (§ 12022.5.) The rationale of our decision in *Floyd* is that in those cases where a specific statute (§ 213) already provides an increased punishment for being armed with a deadly weapon in the commission of the crime, it was " 'not to be supposed that for the same offense without any additional factor existing the added punishment [provided in section 12022] should be imposed.' " (*People* v. *Floyd, supra*, at p. 883.) ■ By its enactment of section 12022.5 the Legislature provided an additional punishment for a wrongdoer who "uses a firearm" in the commission or attempted commission of certain felonies and it left no doubt as to the applicability of such punishment even in those cases where "the use of a weapon" is also an element of the offense.

We next direct our attention to that conduct which constitutes use of a firearm within the meaning of the statute.[5] ■ By employing the term "uses" instead of "while armed" the Legislature requires something more than merely being armed. (*People* v. *Washington* (1971) 17 Cal.App.3d 470, 474 [94 Cal.Rptr. 882].) One who is armed with a concealed weapon may have the potential to harm or threaten harm to the victim and those who might attempt to interrupt the commission of the crime or effect an arrest. (See *People* v. *Pheaster* (1963) 215 Cal.App.2d 754 [30 Cal.Rptr. 363].) ■ Although the use of a firearm connotes something more than a bare potential for use, there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies. "Use" means, among other things, "to carry out a purpose or action by means of," to "make instrumental to an end or process," and to "apply to advantage." (Webster's New Internat. Dict. (3d ed. 1961).) ■ The obvious legislative intent to deter the use of firearms in the commission of the specified felonies requires that "uses" be broadly construed.

■ In the instant case defendant pointed a gun at the victim and demanded money. Defendant thus utilized the gun at least as an aid in com-

---

[5]We note, although not pertinent to the inquiry in the instant case, that while sections 211a and 12022 are concerned with "dangerous or deadly weapons" and "deadly weapons" respectively, the increased penalty of section 12022.5 is invoked only when the accused "uses a firearm."

pleting an essential element of the crime of robbery—the taking of personal property "accomplished by means of force or fear." (§ 211.) The facts are more than sufficient to support a finding that defendant used a firearm within the meaning of section 12022.5 in the commission of the offense. (See *United States* v. *Wilson* (E.D.Pa. 1830) 28 F. Cas. 699, 708 (No. 16730).)

We have previously construed the meaning of the term "use" appearing in other penal legislation. Section 1203 requires that probation be denied "to a defendant who used or attempted to use a deadly weapon upon a human being in connection with the perpetration of the crime of which he was convicted." Two decisions require reconciliation. In *People* v. *Southack* (1952) 39 Cal.2d 578 [248 P.2d 12], the victim was killed by the discharge of a firearm. Under the factual circumstances of that particular case it could have been found that the defendant " 'did not use the gun,' but merely held it without due caution" immediately prior to its discharge. (39 Cal.2d 578, 591.) The judgment of conviction was reversed and the cause remanded for a determination of whether the defendant "did use the gun upon" the victim. There is nothing in *Southack* which supports a conclusion that pointing a gun at an intended victim or even displaying the gun in the commission or attempted commission of a crime may not constitute a proscribed use of the weapon. The court recognized that such acts were proscribed and merely remanded the cause for a determination of fact. Although the gun was on display, there was evidence from which it could have been found that the defendant's only intent was to protect himself should the victim attempt an unlawful entry of the defendant's home and that the display itself did not necessarily constitute a use upon the victim.[6]

In *People* v. *Alotis* (1964) 60 Cal.2d 698 [36 Cal.Rptr. 443, 388 P.2d 675], the defendant was convicted of a crime which could be either a felony or a misdemeanor depending upon which alternative sentence was imposed. (§ 245, subd. (a).) She was sentenced as a misdemeanant, sentence was suspended and she was placed on probation. We held, inter alia, that the restrictions on granting probation to a defendant who uses a deadly weapon had no application to misdemeanants and that defendant had properly been placed on probation. We expressed other views, however, consistent with our holding in *Southack*. There was in *Alotis* significant evidence that the shooting which occurred was involuntary and we concluded that such shooting could be equated with a negligent shooting as in *Southack* for purposes of section 1203.

---

[6]We note that the proscribed use in section 1203 is a narrower one, i.e., a use "upon a human being," than the proscribed use of a firearm "in the commission or attempted commission" of the felony designated in section 12022.5.

*Southack* and *Alotis* hold that a negligent or involuntary act in discharging a firearm not otherwise being used on a human being does not constitute a use within the meaning of section 1203. This is not to say, however, that a negligent or involuntary discharge of a firearm being used to cause harm or fear of harm would excuse the unlawful use. ■ We conclude that the meaning of the term "use" as employed in sections 1203 and 12022.5 is consistent.

■ As stated, defendant's final contention is meritorious. The trial court found defendant to be qualified for treatment as a youthful offender and so sentenced him. (§ 1202b.)[7] But for the operation of section 1202b defendant would be required to serve a minimum sentence of 10 years in prison.[8]

■ Where, as in section 1202b, legislative intent is clearly expressed on the face of a statute its meaning cannot be challenged. (*People* ex rel. *Wood* v. *Sands* (1894) 102 Cal. 12 [36 P. 404].) Courts have consistently given a liberal interpretation to section 1202b. ■ Its purpose is to " 'protect society more effectively by substituting for retributive punishment methods of training and treatment directed toward the correction and rehabilitation of young persons found guilty of public offenses.' " (*In re Ward* (1964) 227 Cal.App.2d 369, 375 [38 Cal.Rptr. 650], quoting from Welf. & Inst. Code, § 1700.) ■ Section 1202b is *in pari materia* with all other statutes "fixing or affecting" criminal penalties. (See *State* ex rel. *Crumpton* v. *Montgomery* (1921) 177 Ala. 212 [59 So. 294].) Despite a single exception,[9] it is a special statute which by its own terms supersedes all related statutes as to the cumulative minimum sentence which a youthful offender must serve. (See *People* v. *Hicks* (1971) 4 Cal.3d 757, 765 [94 Cal.Rptr. 393, 484 P.2d 65]; *In re Ward, supra,* 227 Cal.App.2d 369,

[7]The judgment and sentence prescribed that defendant be sentenced pursuant to section 1202b which provides:

"In any criminal proceeding in which defendant is convicted of a felony or felonies and is committed to the custody of the Director of Corrections, if defendant was, at the time of commission of the offense or offenses, or of the apprehension from which the criminal proceeding resulted, under the age of 23 years, the court may, notwithstanding any other provision of the law fixing or affecting the penalty for the offense or offenses, specify that the minimum term of imprisonment for the offense or offenses cumulatively shall be six months. This section does not apply to any offense punishable by death."

[8]Defendant would be required to serve a minimum five-year term for armed robbery and a consecutive minimum five-year term for using a firearm in the commission of the robbery.

[9]Section 1202b provides: ". . . This section does not apply to any offense punishable by death." We note that since the decision of *People* v. *Anderson* (1972) 6 Cal.3d 628 [100 Cal.Rptr. 152, 493 P.2d 880], no offense is punishable by death. The issue of section 1202b being applicable to an offense which was, as enacted, punishable by death is not now before us and is not herein decided.

374-375.) The courts must, accordingly, give effect to its direction that "notwithstanding any other provision of the law fixing or affecting the penalty" the minimum term of imprisonment "for the offense or offenses cumulatively shall be six months."

The minimum punishment for first degree robbery, five years in the state prison, combined with the minimum additional punishment for using a firearm, also five years, are accordingly reduced in the instant case to a cumulative minimum term of six months. Section 1202b does not purport to affect the maximum term of imprisonment established by the law fixing or affecting the penalty for the offense which in the instant case remains at life. ■■■ The discretion of the trial court to set a minimum term of imprisonment at six months for youthful offenders remains unimpaired notwithstanding the enactment of section 12022.5. Accordingly, when section 1202b is invoked, the youthful offender's sentence shall be a minimum of six months to the maximum set by law.

The judgment in the instant case, after reciting findings of defendant's guilt of robbery in the first degree, use of a firearm and applicability of section 1202b, further states that "the minimum term of imprisonment for the offense shall be six months."[10] The judgment is thus consistent with the views expressed herein, and we presume that the Adult Authority will comply with those views in fixing defendant's term of imprisonment. (See Evid. Code, § 664.)

The judgment is affirmed.

McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

---

[10]The judgment was entered on February 25, 1971, and in the normal course of events defendant would have already served the minimum term as provided herein.