[No. E002355. Fourth Dist., Div. Two. July 3, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
RICKEY JACOBS, Defendant and Appellant.

## COUNSEL

David L. Tucker, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, and Steven H. Zeigen, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**EDWARDS, J.\*** —Defendant Rickey Jacobs was convicted by a jury of robbery (Pen. Code, § 211), possession of stolen property (Pen. Code, § 496), and removing the serial numbers from a firearm (Pen. Code, § 12090). In addition, defendant was convicted of misdemeanor violations of carrying a concealed weapon (Pen. Code, § 12025) and a loaded firearm

---

\* Assigned by the Chairperson of the Judicial Council.

in a vehicle (Pen. Code, § 12031). The jury also found that defendant personally used a firearm in the commission of the robbery within the meaning of Penal Code sections 12022.5 and 1203.06, subdivision (a)(1).[1]

At sentencing, the court found defendant to be ineligible for probation pursuant to Penal Code section 1203.06, subdivision (a)(1), and imposed the upper term of five years for the robbery. A two-year enhancement provided in Penal Code section 12022.5 was added for use of a firearm. The sentences on the remaining counts were ordered to run concurrently with the sentences imposed for the robbery.

Defendant appeals on the ground there was insufficient evidence for the jury to find he used a firearm within the meaning of Penal Code sections 12022.5 and 1203.06, subdivision (a)(1), and consequently the sentencing court erred in determining he was ineligible for probation and imposing the two-year enhancement.

### FACTUAL BACKGROUND

On March 23, 1985, a man later identified to be defendant was looking at a black 1985 Mustang GT automobile on the lot of Fair City Ford in Pomona, California. Charles Szasz, a salesman for Fair City Ford, suggested that defendant test drive the Mustang.

Accompanied by Szasz, defendant drove the Mustang around the side streets of Pomona for a few minutes. Defendant then offered Szasz some cocaine. The offer was refused. A short while later, defendant explained to Szasz that he needed the Mustang to get to another location to see about a $10,000 cocaine deal, and that his wife and children were in danger. Szasz refused to allow defendant to take the Mustang for this purpose and suggested they return to the dealership car lot.

Defendant became adamant about his intentions and advised Szasz that he could either get out of the car now or go with defendant and risk getting

---

[1] These sections provide, in pertinent part, as follows: "12022.5. . . . Any person who personally uses a firearm in the commission or attempted commission of a felony shall, upon conviction of such felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of imprisonment in the state prison for two years, unless use of a firearm is an element of the offense of which he or she was convicted."

"1203.06. . . . Notwithstanding the provisions of Section 1203: [¶] (a) Probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, any of the following persons: [¶] (1) Any person who personally used a firearm during the commission or attempted commission of any of the following crimes:

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(iii) Robbery, in violation of Section 211."

shot. When Szasz refused to get out, defendant said "I have a gun and I don't want to use it." Szasz apparently did not believe defendant and indicated that he was going to take the key from the ignition. According to Szasz's testimony at trial, defendant then "reached over with his right hand and covered the ignition and reached in his jacket with his left hand and cocked what I thought or sounded like he cocked a gun in his jacket."

Szasz testified that he is familiar with guns and the sound of a revolver being cocked. He was positive defendant had a gun, although he never actually saw a firearm. Fearing for his life at this point, Szasz exited the Mustang and defendant drove off.

On April 1, 1985, a highway patrol officer observed defendant asleep in a parked black Mustang in the Highgrove area of Riverside County. The Mustang had New Mexico license plates which the officer determined to be stolen. Defendant was arrested for auto theft; a search of the interior revealed a .22 caliber magnum revolver located in the center console of the vehicle. The serial numbers had been removed but the gun was determined to be stolen.

At trial this gun was cocked by the deputy district attorney in the presence of witness Szasz who testified that the cocking noise was the same sound he heard when defendant threatened him in the Mustang.

Defendant claimed he was not the individual who stole the Mustang. He testified that during the evening hours of March 31, 1985, he was given a ride by an individual named Steve who was driving the black Mustang. They drove around until 2 a.m. the following day when Steve parked the vehicle and left to take care of some business. He never returned.

Defendant moved to the driver's seat and fell asleep. He awoke later that morning when the highway patrol officer arrived. Defendant testified he was not aware the revolver was in the car.

## DISCUSSION

The court is presented with two issues concerning the sufficiency of the evidence:

1. During the commission of the robbery was defendant armed with a firearm?

2. Did he use it?

In resolving these issues, the court is mindful of the basic standards of review that apply to this case. ■ Whether the defendant was armed with and personally used a firearm are factual questions for the jury's determination. (*People* v. *Smith* (1980) 101 Cal.App.3d 964, 967 [161 Cal.Rptr. 787].)

■ On appeal, ". . . the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) The court must "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.] If the circumstances reasonably justify the trial court's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding." (*People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

I

■ Implicit in the jury's verdict is a finding that defendant, in fact, had a gun at the time of the robbery. The evidence certainly supports this finding. Defendant told the victim he had a gun, the sound of cocking the hammer was heard by the victim who was familiar with such sounds, and a gun was subsequently discovered inside the stolen Mustang of which defendant was the sole occupant. Based upon this evidence, we find the jury reasonably found this fact to be true.

II

■ The more difficult question is whether the evidence supports a finding that defendant used the gun within the meaning of Penal Code sections 12022.5 and 1203.06, subdivision (a)(1). The California Supreme Court has given the following definition to the term "use" as contained in Penal Code section 12022.5. ■ "Although the use of a firearm connotes something more than a bare potential for use, there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies. 'Use' means, among other things, 'to carry out a purpose or action by means of,' to 'make instrumental to an end or process,' and to 'apply to advantage.' [Citation.]" (*People* v. *Chambers* (1972) 7 Cal.3d 666, 672 [102 Cal.Rptr. 776, 498 P.2d 1024].)

The *Chambers* court also held that, to give effect to the obvious legislative intent to deter the use of firearms, this term must be given a broad construction. (*Ibid.*)

This definition has been followed in many opinions of the Courts of Appeal. Division One of our district reviewed and summarized the facts of those opinions and distinguished those factors which amount to the use of a firearm from those found to constitute mere possession during the commission of a specified felony. (*People* v. *Hays* (1983) 147 Cal.App.3d 534 [195 Cal.Rptr. 252].)

Of the cases analyzed in *Hays*, those in which no use of a firearm was found involved the unintentional discharge of a weapon, or mere possession only, or a codefendant's use, or a holstered weapon. (*People* v. *Hays, supra,* 147 Cal.App.3d at p. 548.) Those cases in which a firearm was found to be used were grouped into two categories: those in which the gun was aimed at the victim, intentionally fired or used to strike the victim; and those in which the gun was held or exposed in a menacing fashion accompanied by words threatening a more violent use. (*Ibid.*) The actions described in the first category in themselves constitute the use of a firearm. Those in the second category require some type of display of the weapon, coupled with a threat to use it which produces fear of harm in the victim before there can be a use.[2] Obviously, defendant's actions in this case did not fall within the first category. There is no evidence he aimed or discharged the weapon, or struck the victim with it. The jury's finding that he used a firearm would have to come within the second category in order to be affirmed on appeal.

Defendant does not argue that threats concerning the use of the gun were not made to the victim, or that these threats did not produce a fear of harm. ▇▇ Defendant only challenges the sufficiency of the evidence that the firearm was displayed. Admittedly, the victims in the cases reviewed in *Hays* visually observed the firearm being displayed, but none of these cases suggest that this is the only way a firearm can be displayed.[3] ▇▇ We believe that to be consistent with the definition promulgated in *Chambers,* and to give the term a broad construction, a firearm is displayed when, by sensory perception, the victim is made aware of its presence. Once displayed in such fashion, the threat of use sufficient to produce fear of harm becomes a use of that firearm proscribed by Penal Code sections 12022.5 and 1203.06, subdivision (a)(1).

---

[2] See *People* v. *Donnell* (1975) 52 Cal.App.3d 762 [125 Cal.Rptr. 310], in which the suspect was deemed to have used a gun when he entered a bank holding a shotgun and yelled, "This is it. Everyone to the floor," and similarly *People* v. *Colligan* (1979) 91 Cal.App.3d 846 [154 Cal.Rptr. 389], in which a suspect displayed the handle of a gun protruding from his waistband and said he had a gun and did not want to use it.

[3] Absurd results can be imagined under such a limited construction. For example, the trier of fact could never find a use allegation to be true where the victim was unable to actually see the gun because of visual impairment or the aiming of a weapon concealed in the suspect's clothing.

■   The evidence in this case is sufficient to support the jury finding. The victim was made aware of the gun by defendant's statements. These statements were corroborated in the victim's mind when he heard the sound of the hammer being cocked. We cannot say that this was insufficient evidence of displaying a firearm. This fact, coupled with the threats and resultant fear of harm, amounted to a use of the gun.

The judgment of the lower court is affirmed.

McDaniel, Acting P. J., and Hew, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 14, 1987.