[No. B037433. Second Dist., Div. Two. Nov. 9, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
QUINCY HANKEY, Defendant and Appellant.

**COUNSEL**

Sharon G. Wrubel, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Robert F. Katz and John A. O'Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

GATES, J.—Quincy Hankey appeals from the judgment entered following a court trial in which he was convicted of first degree murder with the use of a firearm. (Pen. Code, §§ 187, subd. (a), 12022.5.) He contends: "I. Appellant did not personally use a firearm within the meaning of Penal Code section 12022.5, and the two year enhancement of his sentence must be stricken. II. Appellant's sentence of 25 years to life constitutes cruel and unusual punishment under the circumstances of this case, and his sentence should be reduced to 15 years to life."

Viewing the evidence in accordance with the usual rules on appeal (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110]),

it was established that between the hours of 1:30 and 2 a.m. on June 13, 1987, Richard White, a bus driver, saw two men hitting and kicking a woman at the corner of Compton Boulevard and Oleander Street in Compton. They pulled her by her hair into a parking lot toward a car, where a third man drew a gun and opened the car door. White then left the scene to call for help. He was unable to identify the man with the gun.

Shortly thereafter Los Angeles Police Officer John Swanson found the woman's body in the middle of Oleander Street. The coroner's report indicated the cause of death was a gunshot wound to the upper body. There were actually two distinct injuries but it was possible they had both been inflicted by a single bullet, i.e., the fatal one was described as having been caused by a bullet that had entered the victim's left upper back and exited through the right side of her skull, while the other was a through and through wound to her right upper arm.

During an interview with Officer Swanson which was reduced to writing and signed by appellant, appellant admitted his involvement in the crime, but claimed he had not shot the victim. He asserted he and three friends, including codefendant George Davis, Jr., set out to commit a robbery and that he and Davis were armed with handguns.[1] When they saw the woman, they decided she would be their victim. Appellant told Officer Swanson he assisted in holding her while he and Davis dragged her from the street to her car. He said that once inside, she was placed in a kneeling position facing the rear of the vehicle. Appellant further alleged that he was on her right and although admitting he had threatened to shoot her if she did not release her car key, he claimed that when she refused to do so, it was Davis who had shot her from his position on her left.

■    The contention that the evidence does not sustain the imposition of a Penal Code section 12022.5 enhancement because appellant was not shown to have personally used a firearm during the commission of the underlying offense, is meritless. By his own admission, appellant was armed and threatened to shoot the victim if she did not surrender her property. His mistaken assertion it was also necessary to prove he fired the fatal shot is a common misconception, apparently stemming from the unhappy use of the expression, "felony *murder,*" to describe the crime of which he was convicted. If unanalyzed, such terminology naturally suggests that the subject offense was a classic "murder," i.e., the intentional killing of a human being with malice aforethought. Of course, such is not the case.

---

[1] Davis was tried separately and is not a party to this appeal.

In truth, the homicides involved in this particular offense may well occur unintentionally, even accidentally. (*People* v. *Dillon* (1983) 34 Cal.3d 441, 475 [194 Cal.Rptr. 390, 668 P.2d 697].) Consequently, the crime might more accurately be characterized as, "*a robbery* in the furtherance of which death occurs." There being no question that appellant personally used a firearm during the course of the instant robbery, the enhancement was entirely proper regardless of whether or not he also personally shot the victim. (*People* v. *Walker* (1988) 47 Cal.3d 605, 635 [253 Cal.Rptr. 863, 765 P.2d 70]; *People* v. *Johnson* (1974) 38 Cal.App.3d 1, 12 [112 Cal.Rptr. 834], hg. den. See also *People* v. *Anderson* (1987) 43 Cal.3d 1104, 1138 et seq. [240 Cal.Rptr. 585, 742 P.2d 1306], in which our Supreme Court carefully distinguished between the general culpability of aiders and abettors in "felony murder," per se, and their particular liability to punishment under the "felony-murder special circumstance" rules set forth in Penal Code section 190.2.)

The correctness of this result becomes even more manifest when we consider that the homicide which will trigger the application of the felony-murder rule because it occurred during the perpetration of one of the felonies designated in Penal Code section 189, *need not be caused by gunfire at all.* Nevertheless, if any of the perpetrators of such a crime has additionally endangered society at large by using a gun during its commission, he ought not to escape the consequences of this action by the fortuitous fact some innocent person died without being shot.

Equally meritless is appellant's contention that his punishment is cruel and unusual because of his youth, his lack of prior convictions, and the possibility he did not intend to kill. The sentence imposed was certainly not grossly disproportionate to the offense nor to appellant's culpability. This is especially so, since he admitted he had been armed, had actively participated in the planned robbery, and had himself threatened to shoot the victim. (*People* v. *Dillon, supra,* 34 Cal.3d 441, 478-479.)

The judgment is affirmed.

Roth, P. J., and Fukuto, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 15, 1990.