[No. E014202. Fourth Dist., Div. Two. Feb. 26, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
RICARDO LERMA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 1, 2 and 4.

## Counsel

Gregory Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Holly D. Wilkens and Jeffrey J. Koch, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**RAMIREZ, P. J.**—A jury convicted Ricardo Lerma of two counts of second degree murder (Pen. Code, § 187, during which he used a knife (Pen. Code, § 12022, subd. (b)). The jury also found the special circumstance of multiple murder to be true. (Pen. Code, § 190.2, subd. (a)(3).)[1] In bifurcated proceedings, Lerma admitted that he had suffered two prior convictions. (Pen. Code, § 667.) He was sentenced to prison and appeals, claiming error in the jury instructions, the admission of evidence, one of the knife use findings, and the imposition of a restitution fine. We reject his contentions and affirm, while directing the trial court to correct an error in the abstract of judgment.

### Facts

The two victims, who were brothers, lived together in a small house in Perris. Lerma was staying with them. All three men used drugs, and at one point Lerma had sold drugs to the older brother.

On the night of February 13, 1992, Lerma stabbed the younger brother in the abdomen with a knife, which penetrated to the victim's spine. Lerma then stabbed the older brother twice before hitting him three times with a club. The younger brother made it to the home of a neighbor, where he identified Lerma as his assailant before dying. The older brother was later found dead on the floor of his living room. Shortly before the murders, Lerma had asked a former girlfriend for money, but she had none to give him. A few hours after the crimes, Lerma showed up at the trailer of a friend of his and he told the friend that he had just "stabbed two snitches."

---

[1]Lerma was charged with multiple murder, within the meaning of Penal Code section 190.2, subdivision (a)(3). The jury returned a true finding as to this allegation. Penal Code section 190.2, subdivision (a)(3) requires that one of the murders be of the first degree, and Lerma's sentence does not reflect the fact that a true finding was made as to this allegation. However, no further proceedings were had below to vacate this finding.

ISSUES AND DISCUSSION

1.-2.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

3. *Knife Use Finding*

The coroner, who performed the autopsy on the older brother's body, testified that the latter had been stabbed in the left scalp just behind the ear and in the left side of his neck. He also had two blunt force wounds to his left scalp and one to the back of his head, all of which had fractured his skull. The coroner opined that the cause of death was the latter three wounds. He stated that the knife wounds were not life threatening.

Lerma testified that he had stabbed the older brother in the neck after the latter had kicked him following Lerma's stabbing of the younger brother. Lerma never stated when or how he additionally came to stab the older brother in the scalp. He did testify, however, that he delivered the blunt-force blows after the neck stabbing when the older brother came at him in the bedroom.

■■■ The jurors were instructed to make a true finding as to the knife use allegation attached to the murder of the older brother if they concluded that Lerma "display[ed the knife] in [an] intentionally . . . menacing manner or intentionally . . . str[uc]k . . . or hit a human being with it . . . [¶] in the commission of the [murder] . . . ." The jury made such a finding. Lerma now contends it cannot stand because the knife wounds were not the cause of death.

In *People* v. *Walker* (1988) 47 Cal.3d 605 [253 Cal.Rptr. 863, 765 P.2d 70], the defendant and a codefendant entered a liquor store. The defendant then committed a number of acts, while having a gun in his hand, designed to facilitate a robbery, including telling his codefendant, after the money had been obtained, " '. . . We're not going to leave any witnesses.' " (*Id.,* at p. 619.) Thereafter, the store owner was fatally shot. It could not be determined who fired this shot.

On appeal, the defendant criticized the trial court's response to a jury inquiry whether the defendant had to personally fire the fatal shot in order to make a gun use finding as to the murder. The California Supreme Court stated: "Defendant . . . contend[s] the [trial] court should have instructed

*See footnote, *ante,* page 1221.

the jury that the gun-use allegation under the murder count could only be found true if defendant *used* the gun to commit the murder, and that his earlier display or use of the gun in the commission of a 'separate' felony (robbery) would be insufficient to support such a finding—even if he had already formed the intent to kill at that time. Defendant cites no authority for this proposition and it is far from self-evident, the jury having found that defendant murdered during commission of the felony of robbery. [Penal Code s]ection 12022.5 is intended to distinguish those who are willing to use firearms while committing felonies from those who are not, and to increase the penalty for the former. [Citations.] Defendant clearly belongs in the first category. [¶] In any event, we need not determine whether further clarifying instructions were in order, for on these facts there could be no prejudice. Defendant expressed a clear desire to leave no witnesses, used the gun to herd his victims into the back room, assaulted [the co-owner] in an attempt to kill him, and ordered [the employees] to their knees. Even assuming for sake of argument that defendant's companion fired the shots, we do not find defendant's own gun use so separate from the actual shootings that prejudice could be inferred from the court's failure to more fully instruct." (*People* v. *Walker, supra,* 47 Cal.3d at pp. 634-635, original italics.)

An earlier *Walker* case, referred to in the above cited *Walker* case, cited *People* v. *Johnson* (1974) 38 Cal.App.3d 1 [112 Cal.Rptr. 834], a case Lerma mentions in his opening brief, yet urges us to disregard because he contends that it is unsound and because he mistakenly asserts that "[i]t does not appear [it] has ever been followed . . . on this point."[6] In *Johnson,* a gun use enhancement was upheld for a murder committed during a robbery where a codefendant had fired the fatal shot, but the defendant had used the gun he had to help commit the robbery. The *Johnson* court held, "Although [the defendant] did not personally fire the shot which killed [the store owner], he personally used a revolver in the series of joint offenses. [Penal Code s]ection 12022.5 penalizes those who *use* firearms in the *commission* of the listed crimes. A weapon is *used* . . . not only when it is fired, but when it is pointed at a victim to enforce a demand. [Citation.] . . . [The defendant] committed three joint crimes in the . . . holdup, including the murder of [the

---

[6]As was pointed out in *People* v. *Berry* (1993) 17 Cal.App.4th 332 [21 Cal.Rptr.2d 299], *Johnson* was cited in *People* v. *Walker* (1976) 18 Cal.3d 232 [133 Cal.Rptr. 520, 555 P.2d 306], which, in turn, was cited in *People* v. *Walker, supra,* 47 Cal.3d at page 635. (*People* v. *Berry, supra,* 17 Cal.App.4th at p. 336.) *Berry* also embraced the holding of *Johnson* (*People* v. *Berry, supra,* 17 Cal.App.4th at p. 339) as did *People* v. *Hankey* (1989) 215 Cal.App.3d 510 [263 Cal.Rptr. 615]; *In re Antonio R.* (1990) 226 Cal.App.3d 476 [275 Cal.Rptr. 442] and *In re Londale H.* (1992) 5 Cal.App.4th 1464 [7 Cal.Rptr.2d 501]. As *Berry* points out, although the California Supreme Court did not refer to *Johnson* in *People* v. *Walker, supra,* 47 Cal.3d 605, it "affirmed the viability of [it] . . . ." (*People* v. *Berry, supra,* 17 Cal.App.4th at p. 337.)

store owner]. Even though [he] did not personally shoot [the owner], he *used* a pistol in his *commission* of [the owner's] murder. He is liable for the added penalty . . . , even though he did not do the actual shooting." (*People* v. *Johnson*, *supra*, 38 Cal.App.3d at p. 12, original italics.)

The holding in *Johnson* was reiterated in *People* v. *Hankey*, *supra*, 215 Cal.App.3d 510; *In re Antonio R.*, *supra*, 226 Cal.App.3d 476; *In re Londale H.*, *supra*, 5 Cal.App.4th 1464 and *People* v. *Berry*, *supra*, 17 Cal.App.4th 332.

The above cited cases instruct that the defendant's use of the weapon need not be the cause of the death of the victim in order for a weapon use finding to be upheld. ■ This is entirely consistent with views taken by this court, and others, as to the meaning of the word "use." In *People* v. *Poindexter* (1989) 210 Cal.App.3d 803 [258 Cal.Rptr. 680], to which Lerma calls our attention, this court held, in another context, that "use" means that there must be "a nexus between the offense and [the item at issue] . . . [that the item] was . . . an instrumentality in the crime." (*Id.* at p. 808.) Other decisions have referred to "conduct which produces a fear of harm or force by means or display of a [weapon] in aiding the commission of [the crime]. 'Use' means . . . to 'make instrumental to an end . . .' and to 'apply to advantage.' . . . The obvious legislative intent to deter the use of [weapons] in the commission of [crimes] requires that 'uses' be broadly construed." (*People* v. *Chambers* (1972) 7 Cal.3d 666, 672 [102 Cal.Rptr. 776, 498 P.2d 1024].)

■ Here, there was a nexus between the stabbing and the death of the victim. The knife was instrumental in the consummation of the murder and was used to advantage. Even if we accept Lerma's version of the events and additionally assume that he stabbed the older brother in the scalp around the same time he stabbed him in the neck, this wounding of the brother was connected to, assisted, and was instrumental in his ultimate demise by means of the club. Certainly, the facts fulfilled the requirements set forth in the jury instructions for a true finding as to the allegation. To be sure, Lerma "display[ed the knife] in [an] intentionally . . . menacing manner" and "intentionally str[uc]k . . . a human being with it." Therefore, the true finding as to the knife use allegation was proper.

### 4. Restitution Fine*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1221.

## DISPOSITION

The trial court is directed to correct the abstract of judgment, which erroneously states that weapon use enhancements were also found pursuant to Penal Code section 12022.5, subdivision (a), but were stricken by the sentencing court. No such finding was made by the jury and the sentencing court struck nothing. In all other respects, the judgment is affirmed.

Richli, J., and McDaniel, J.,* concurred.

A petition for a rehearing was denied March 15, 1996, and appellant's petition for review by the Supreme Court was denied May 15, 1996.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.