Filed 4/2/14  P. v. Vue CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C074526 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F07653) |
| v. | |
| XIONG VUE, | |
| Defendant and Appellant. | |

A jury found defendant Xiong Vue guilty of attempted murder and carrying a loaded firearm on a public street.  The jury also found a gun enhancement allegation, tied to the attempted murder charge, to be true.  On appeal, defendant argues there is insufficient evidence to support the gun enhancement or the guilty verdict on the gun charge.  He also contends there is a clerical error in the abstract of judgment.  We agree the abstract should be corrected.  Otherwise, we affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant married Txor Her in Laos and moved to California in 1980. They had 10 children together. In 2002, defendant started dating Sandra Lee and moved in with her one year later. They had a child together in 2006, M. V. In 2007, while living with Lee, defendant became ill. He eventually had his right leg, left foot, and a finger amputated and used a power chair.

Defendant and Lee broke up in 2012, and defendant moved in with his son Gary. On November 12, 2012, defendant drove his wheelchair 4.7 miles, on public streets, from Gary's house to Lee's house. Defendant testified he loaded the gun when he bought it and carried it in his backpack.

When he arrived at the house, his son M. V. came outside and talked to him. Lee was inside and saw defendant from a window. She did not leave the house, see the gun, or talk to defendant. According to M. V., defendant was loading his gun in front of the house and threatening to kill Lee. M. V. went inside the house to tell Lee his father had a gun. Lee's sister-in-law eventually called the police.

Deputy Steve Lickiss of the Sacramento County Sheriff's Department was sent to a house in Sacramento on November 12, 2012. He found defendant on the front porch of that house, armed.

A jury found defendant guilty of four crimes: 1) attempted murder; 2) possession of a concealed weapon; 3) carrying a loaded firearm on a public street; and 4) child endangerment. The jury also found a gun enhancement allegation to be true by finding the defendant personally used a gun, by displaying it in a menacing manner, during the commission of the attempted murder.

The trial court sentenced defendant to an indeterminate term of life in prison for the attempted murder charge. The trial court also added a consecutive term of 10 years for using the gun and one year for child endangerment, for a total of 11 years consecutive to and in addition to the life sentence. He received eight months apiece for carrying a

2

loaded firearm on a public street and possessing a concealed weapon.  Both eight-month terms were stayed.  The trial court prepared two abstracts of judgment, one for the indeterminate sentence and the other for the determinate sentence.  On the determinate abstract, the court did not include parentheses around the two stayed terms.

## DISCUSSION

Defendant makes two insufficiency of the evidence arguments on appeal.  First, he contends there was insufficient evidence to support the gun enhancement because there was no evidence he displayed the gun in a menacing manner.  Second, he contends there was insufficient evidence to convict him for carrying a loaded gun on a public street because there was no evidence he carried the gun in an incorporated city.  We disagree on both points.

## I

### *Standard Of Review*

On appeal, "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find defendant guilty beyond a reasonable doubt."  (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)  "The court must 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.]  If the circumstances reasonably justify the trial court's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding.' "  (*People v. Jacobs* (1987) 193 Cal.App.3d 375, 379-380.)

3

## II

### *There Is Sufficient Evidence To Support The Gun Enhancement*

Defendant contends there is insufficient evidence to support the gun enhancement under Penal Code[1] section 12022.53. For the gun enhancement allegation to be true, defendant must have displayed the weapon in a menacing manner. Defendant argues the gun was not displayed in a menacing manner because the intended victim, Lee, "was never aware of the gun as she was not in the vicinity of [defendant]. [M. V.] was aware of the gun but [defendant] did not threaten [M. V.] with the gun in any manner." Essentially, defendant argues he must have directly threatened his intended victim for the jury to find he displayed the weapon in a menacing manner in the commission of the attempted murder. Defendant is wrong.

Section 12022.53, subdivision (b), adds 10 years to a sentence when a defendant uses a firearm in the commission of a felony. At issue is the meaning of the phrase, "uses a firearm." "[U]sed a firearm" is defined by statute as, "to display a firearm in a menacing manner, to intentionally fire it, to intentionally strike or hit a human being with it." (§1203.06, subdivision (b)(2); see *People v. Cory* (1984) 157 Cal.App.3d 1094, 1101-1104 [concluding that the definition of "used a firearm" in section 1203.06 applies equally to section 12022.53].) The jury was instructed with CALCRIM No. 3146, which incorporates this language. The pertinent component of the definition here is "to display a firearm in a menacing manner" because defendant did not fire or hit anyone with a gun.

"A fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*People v. Phelps* (1996) 41 Cal.App.4th 946, 949.) "Because the statutory language is generally the most reliable indicator of [the Legislature's] intent, we look first at the words themselves,

---

[1]     Further section references are to the Penal Code.

4

giving them their usual and ordinary meaning and construing them in context. [Citation.] If the plain language of the statute is clear and unambiguous, our inquiry ends, and we need not embark on judicial construction. [Citations.] If the statutory language contains no ambiguity, the Legislature is presumed to have meant what it said, and the plain meaning of the statute governs." (*People v. Johnson* (2002) 28 Cal.4th 240, 244.)

Nothing in the language of section 12022.53 or section 1203.06 shows a legislative intent to limit their application to only those defendants who display a firearm directly to their intended victims. The language chosen by the Legislature, "uses a firearm" and "display the firearm in a menacing manner," describes only how the firearm must be shown. To argue the jury must also consider to whom the defendant directed his or her actions would be adding words to both statutes.

Our analysis of the case law reveals that the word "uses" should be broadly defined. " 'Use' means, among other things, 'to carry out a purpose or action by means of,' to 'make instrumental to an end or process,' and to 'apply to advantage.' " (*People v. Chambers* (1972) 7 Cal.3d 666, 672.) "In other words, the term 'use,' as employed in this statute, should be broadly construed, consistent with common usage, to check the magnified risk of serious injury which accompanies any deployment of a gun in a criminal endeavor." (*People v. Granado* (1996) 49 Cal.App.4th 317, 322.)

In *Granado*, the defendant pulled a gun from his waistband and displayed it while demanding money. (*People v. Granado, supra*, 49 Cal. App.4th at pp. 320-221.) One of the victims ran away before he saw the gun. (*Id*. at p. 320.) The defendant first argued the gun enhancement could attach only if he pointed or fired the gun at a person, or if the display of the gun was accompanied by verbal threats. (*Id*. at p. 322.) The court disagreed. It held the gun enhancement attaches, and therefore the defendant displayed the gun in a menacing manner, when there is a "facilitative, gun-related act." (*Id*. at p. 325.) The display of the gun cannot be simply inadvertent or incidental to the crime. (*Ibid*.) The defendant completed a facilitative, gun-related act by removing the gun from

5

his waistband. (*Ibid.*) It was not inadvertent or incidental to the crime because there was "no reasonable explanation for [the] defendant's conduct other than a desire to facilitate the crime." (*Ibid.*)

The defendant in *Granado* also argued that the gun enhancement could not attach to the victim who ran away and was unaware of the gun. (*People v. Granado, supra*, 49 Cal. App.4th at p. 326.) Again, the court disagreed. "To excuse the defendant from this consequence merely because the victim lacked actual knowledge of the gun's deployment would limit the statute's deterrent effect for little if any discernible reason." (*Id.* at p. 327.) "[A] gun may be used ' "in the commission of" ' a given crime even if the use is directed toward someone other than the victim of that crime." (*Id.* at pp. 329-330.) The statute was enacted to "constrain a would-be robber in [the] defendant's position to *keep the gun in his waistband*." (*Id.* at p. 327.)

Using a firearm, even if the intended target is not present, increases the probability of violence. There is a "pervasive and inherent escalation of danger which arises from the *defendant's act* of deployment. By merely bringing a gun 'into play,' the defendant removes impediments to its actual discharge and thus enhances the danger of violent injury not only through an intentional act by a victim or a third party, but through an impulsive or inadvertent act by the defendant." (*People v. Granado, supra*, 49 Cal.App.4th at p. 327.) The conduct "must be such as 'produces a fear of harm or force' on the part of a hypothetical, reasonable observer--such as a juror looking back at the event through the lens of the evidence at trial." (*Ibid.*) The victim need not see the gun, nor be afraid of the gun, for it to be displayed in a menacing manner.

In *People v. Thiessen* (2012) 202 Cal.App.4th 1397, this court followed the same line of reasoning as the court in *Granado*. The defendant was found guilty of attempted murder and a gun enhancement allegation was found to be true. (*Id.* at p. 1403.) He pointed a shotgun out of the window of a moving car, but when he pulled the trigger, the gun did not fire. (*Ibid.*) The defendant argued he could not be found to have used a gun.

6

(*Id* at p. 1404.)  This court did not agree.  The court in *Thiessen* focused on deciding if the gun was used to facilitate the commission of a crime and did not question if the defendant's use of the shotgun was considered a menacing display, even though it was unseen by a victim.  The court did admit that a firearm is more commonly used in other ways, such as "by displaying it to menace a victim," but the court still found defendant used a gun.  (*Id.* at pp. 1404-1405.)

We see no reason to deviate from this reasoning.  Even if the targeted victim does not see the weapon, when the defendant takes it out of a backpack (as here) he brings the gun into play, in front of the victim's residence, and escalates the threat of violence.  The statutes were written to keep the gun in the backpack.  If these statutes did not apply when the targeted victim does not see the firearm, their deterrent effect would be limited.  They would apply only to individuals who are able to complete or almost complete their crimes.  To the contrary, however, we conclude section 12022.53 is satisfied when a gun is displayed in a menacing manner that would produce fear of harm or force in a hypothetical, reasonable observer, and it need not be displayed to the intended victim.

To support his argument that the intended victim needs to be aware of the weapon and the threat, defendant relies on *People v. Chambers, supra,* 7 Cal.3d at pages 672-673 (where the defendant pointed the gun at the victim and demanded money); *People v. Jacobs*, *supra*, 193 Cal.App.3d at page 382  (where the defendant made the victim aware of the gun by his statements and then cocked the gun, still in his pocket); and *People v. Dominguez* (1995) 38 Cal.App.4th 410, 422 (where the defendant used a gun when the victim felt a cold steel cylindrical object at the back of victim's neck coupled with threats to " 'kill' ").  His reliance on these cases is misplaced.  It is true that in each of these cases the defendant somehow made the victim aware of the gun, but contrary to defendant's suggestion, none of those cases actually considered whether "the assailant *must* display or otherwise make a victim aware of a weapon and then threaten in some

7

way, verbal, or non-verbal, to use it." (Italics added.) "[C]ases are not authority for propositions not considered." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176.)

Here, the evidence was sufficient for the jury to determine the firearm was used by being displayed in a menacing manner. " 'Whether the defendant . . . personally used a firearm [is a] factual question[] for the jury's determination.' " (*People v. Dominguez, supra*, 38 Cal.App.4th at p. 421.) Defendant did not passively display the gun or inadvertently expose it. According to M. V., defendant was loading the gun in front of Lee's house.[2] This is not an inadvertent or incidental display of the gun. There was no other reason for the gun to be out of the backpack except to facilitate his intended crime of murder. Thus, removing the gun from the backpack was a "facilitative, gun-related act." It is of no matter that Lee, the targeted victim, did not see the gun. The gun increased the danger of the situation for the third parties and defendant. Also, while defendant tries to minimize his conduct by asserting that he "merely held the gun in his hands while putting bullets into it," the fact is that he did this in the presence of his six-year-old son, while telling his son that he was there to kill the boy's mother. It borders on the absurd for defendant to claim this display of the weapon was not "menacing." Thus, we conclude there was more than sufficient evidence for the jury to conclude that defendant used a firearm within the meaning of section 12022.53, subdivision (b).

---

[2]     At first glance, this evidence appears to contradict defendant's testimony that the gun was loaded before he traveled to the house. Looking at the evidence in the light most favorable to the judgment, however, the jury could have reasonably believed that defendant loaded the gun in both places. At the very least, M. V.'s testimony established that defendant took the gun out in front of M. V., whether or not he loaded it at that time too. Defendant also threatened Lee in front of M. V. with the gun exposed.

III

*There Is Sufficient Evidence To Support The Guilty Verdict*

*Of Carrying A Loaded Firearm In A Public Place*

Defendant argues there is no evidence to support the guilty verdict of carrying a loaded firearm under section 25850, subdivision (a) because there is nothing in the record to support the finding that he carried the loaded firearm in an incorporated city. We disagree.

Section 25850 does not prohibit carrying a loaded weapon in all public places. (*People v. Knight* (2004) 121 Cal.App.4th 1568, 1575.) In *Knight*, this court held the plain meaning of former section 12031[3] "prohibits carrying a loaded firearm on one's person or in a vehicle: (1) while in any public place in an incorporated city; (2) while on any public street in an incorporated city; (3) while in any public place in a prohibited area of unincorporated territory; or (4) while on any public street in a prohibited area of unincorporated territory." (*Knight*, at p. 1576.)

Here, there was no evidence, nor jury instructions, regarding an unincorporated territory or prohibited area. Accordingly, the issue here is whether defendant carried a loaded firearm in any public place or on any public street in an incorporated city.

It is not contested that defendant carried a loaded gun on a public street. On the day of the attempted murder, defendant drove his wheelchair from Gary's house to Lee's house. He testified he loaded the gun when he bought it and had the gun with him in a backpack. Both parties stipulated that defendant had to travel on public streets when driving between the two homes. Thus, defendant carried a loaded gun on a public street.

---

[3] Effective 2012, section 12031 was renumbered to section 25850. (Stats. 2010, ch. 711, § 6.) Defendant was prosecuted under section 25850, but *Knight* refers to section 12031. The minor changes made to the statute when renumbered are not relevant here.

9

Defendant argues, however, that there is no evidence that the public streets he drove on were in an incorporated city. But there is. Deputy Lickiss was sent to an address in Sacramento. The deputy discovered defendant sitting on the front porch of the house with his loaded weapon. The jury was instructed that Sacramento is an incorporated city. From this evidence, the jury could find defendant had to travel on public streets to be discovered at a house in the incorporated City of Sacramento. Thus, there is sufficient evidence to support the guilty verdict of carrying a loaded weapon on a public street.

## IV

### *The Trial Court Should Fix The Clerical Error In The Abstract Of Judgment*

Defendant argues the abstract of judgment for the determinate sentence must be corrected. The People agree to this correction. Customarily, sentences that are stayed pursuant to section 654 are enclosed with parentheses in box 1. The determinate abstract here omits the parentheses around the stayed sentences. We will order the trial court to correct the clerical error in the abstract of judgment to include parentheses around the sentences stayed.

## DISPOSITION

The judgment is affirmed, but the case is remanded to the trial court with instructions to correct the abstract of judgment by placing parentheses around the sentences stayed pursuant to section 654. The court shall transmit a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

            ROBIE        , J.

We concur:


    NICHOLSON    , Acting P. J.


    HOCH       , J.

10