Filed 10/6/21  P. v. Williams CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B304540 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA075866) |
| v. | |
| ANTHONY WILLIAMS, JR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Charles A. Chung, Judge.  Affirmed.

Adrian Dresel-Velasquez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Blythe J. Leszkay and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Anthony Williams, Jr. (defendant), appeals from his conviction of second degree burglary and other felonies. He contends that denial of his motion to appoint substitute counsel was an abuse of discretion; that his jury trial waiver entered while acting in pro. per. was invalid and not knowing, intelligent, or voluntary; that the denial of his motion to withdraw his jury trial waiver was an abuse of discretion; and that an unauthorized portion of his sentence must be corrected. We correct the unauthorized portion of his sentence, but we find no merit to defendant's remaining contentions and otherwise affirm the judgment.

## BACKGROUND

Defendant was charged with second degree burglary in violation of Penal Code section 459 (count 1),[1] and three counts of soliciting, inducing, or encouraging a minor to commit a felony in violation of section 653j (counts 2, 3, 4). The information further alleged pursuant to sections 667, subdivisions (b) through (j) and 1170.12 that defendant had been convicted in 1985 of robbery, a serious or violent felony.

After a court trial defendant was convicted of all four counts. The trial court found true defendant's prior strike conviction and sentenced him on January 27, 2020. The court chose count 2 as the base term and sentenced defendant to the middle term of five years, doubled to 10 years as a second strike. The court imposed the middle term of five years on each of counts 3 and 4, and stayed the execution pursuant to section 654. On

---

[1]     All further unspecified code references are to the Penal Code.

count 1 the court imposed the high term of three years, doubled to six years as a second strike, stayed pursuant to section 654. The court imposed a $3,000 restitution fine as well as statutory fees and assessments.

Defendant timely filed a notice of appeal from the judgment.

**Prosecution evidence**

Karaleigh Roe testified that she was the executor of her late father-in-law's estate, which included a house in Palmdale, where she lived for six to eight months prior to listing it for sale in April 2018. Though it was listed with Keller Williams, no signs were posted, and an offer was accepted the same day it was listed. In June 2018 while the house was still in escrow, Roe was still in the process of cleaning and still had some items of personal property there. She or other family members visited the house once or twice per week. When there in June, Roe noticed that the sliding glass door in the master bedroom was unlocked and property was missing from inside the house, specifically, snow skis, a box of keys, a furniture dolly, a flashlight, a mini refrigerator, a television projection lens, and toilet paper. The seven television sets in the house were not taken.

There were four motion-activated surveillance cameras with audio on the property. One camera was in the living room and three were outside with views of the house, front yard, and patios. Video recorded by the cameras one day in June was played in court. Those later identified as defendant, his wife, and three children are seen on video inside the house for approximately 20 minutes taking various items. Roe testified that the object defendant was seen holding was toilet paper that had been in the hallway bathroom. Defendant is also seen

3

holding the furniture dolly that was missing, and then the mini refrigerator that had been on the back patio. A woman's voice is heard saying something about the maroon curtains in the bedroom. A woman is later seen holding snow skis, which had been either in the hallway or the garage. A boy is seen holding a kitchen timer, a lens for a projection TV, and a box of various keys Roe had collected from around the house. Roe did not know defendant or give him permission to enter, and she had never before seen any of the people depicted in the video. Roe put the surveillance video on a social media community page, which led to the identification of the people in the house.

**Defense evidence**

Defendant testified that he lived three blocks away from the Roe house since 2010 and was looking for another house in the area. He had seen the Roe property several times and knew it was empty. On June 1, 2018, when defendant stopped there with his family, they parked in front, intending only to look. When defendant walked around the house he found the open door. He denied entering the house with the intent to steal. Defendant sent his son across the street to get information from neighbors about who was selling the house, but he returned saying no one was home.

Once inside the house defendant saw that it was vacant, with things left behind that looked like junk. The house and carpet were filthy. Defendant claimed that he did not know that his wife took the skis until he saw them in the car. He thought the dolly was abandoned junk that had been left outside in the backyard, where it looked like it had been for a long time. The wheels were flat, it was cracked on one side and coming loose, and it was rusty. The refrigerator had no electrical cord, but he

4

could fix refrigerators and other appliances.  Defendant explained that he operated a hauling service and as a result had learned to fix things that people had paid him to haul away.  Defendant testified that the object that looked like toilet paper in the video was in fact recyclable cans.  He never saw a camera lens in the house, his car, or at home.  Defendant denied telling the children to take whatever they wanted and claimed that he would never tell them to take things.  While in the house defendant's son found the phone number of the real estate agent, who defendant called and left his number.

**Rebuttal**

Roe testified that the dolly was only a few years old and had been kept in the living room.  She had purchased it in order to clean out the property in 2016.  She did not think the tires were flat.  When she first saw the video it looked as though the people were finding whatever they wanted to take, but the children were behaving as though they believed they were looking for a place to live.

## DISCUSSION

### I.    The *Marsden* motions[2]

Defendant contends that the trial court's denial of his motion to appoint substitute counsel was an abuse of discretion, which resulted in a violation of his right to counsel guaranteed by the Sixth Amendment to the United States Constitution.

"When a defendant seeks substitution of appointed counsel pursuant to *People v. Marsden, supra*, 2 Cal.3d 118, 'the trial court must permit the defendant to explain the basis of his

---

[2]      *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

contention and to relate specific instances of inadequate performance. A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.'" (*People v. Taylor* (2010) 48 Cal.4th 574, 599.) "We review the denial of a *Marsden* motion for abuse of discretion. [Citation.] Denial is not an abuse of discretion 'unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel.'" (*Ibid.*)

### A. *The motions*

Defendant made five *Marsden* motions in March 2019, on June 3, 2019, July 17, 2019, January 6, 2020, and January 27, 2020. Defendant challenges only the trial court's refusal to appoint substitute counsel in place of Deputy Public Defender Maceo Lewis, which was the subject of the three 2019 motions. Defendant's requests to replace Lewis were heard on June 3, 2019 and July 17, 2019.[3]

#### 1. *June 3, 2019*

When the case was called for jury trial on June 3, 2019, defendant was represented by Lewis. Both sides announced ready for trial. When defendant wished to address the court, the courtroom was cleared for a *Marsden* hearing. The court noted that defendant had brought a *Marsden* motion two months earlier and asked defendant to focus on what had happened since then.

---

[3] The appellate record does not contain a transcript of the *Marsden* hearing conducted in March 2019.

6

Defendant responded that he had asked counsel to call his accountant, his home lender, and his children, especially his 18-year-old son. His children would testify to his intent upon entering the house was an interest in buying the property. His accountant would testify that he was aware that defendant was buying another house, that he had been in business for over seven years as a scrapper, and that he cleaned homes and hauled away junk for owners and real estate agents. Defendant explained that this would give him a defense to the allegation that he had taken the mini refrigerator, because it was outside the house. Defendant explained that the lender could testify that he had been buying a ranch, but the contract had been breached, so he was searching for another property. Defendant also said that he told counsel that the witness (Roe) had lied under oath at the preliminary hearing and had withheld a portion of the surveillance video that would prove it. Defendant claimed that the parts withheld would show exactly why he was there.

The court explained to defendant that the preliminary hearing could not be relitigated, and at trial, if the prosecutor played only a portion of the video out of context, his attorney would have the opportunity to play the portion that would put it in context. The court asked defendant, "So has Mr. Lewis told you he's not willing to do that?" Defendant replied, "No. [T]hat's the good thing about him. He . . . actually listened to what I said, because I've been telling him that the lady was lying and that there was more to that video than what they're showing. They're withholding credible evidence purposefully." Defendant added, "[T]hat's what bounded me over." Asked why that would be a basis to remove counsel from the case, defendant explained that he had asked counsel to present the video to the court and to ask

7

for a dismissal based upon the witness's having lied under oath. The court explained to defendant that there was no legal basis for a motion to dismiss, that these matters had to be presented to a jury, not the court, and that counsel was correct.  Defendant said that this made no sense and suggested that defense counsel should present the video to the district attorney, who would then see the truth and would have no reason to take this matter further.

Lewis told the court that he had been practicing criminal law since 2006 and had conducted 58 trials, including cases similar to this one.  He was assigned the case in December 2018 and conducted the preliminary hearing.  As far as he knew he had been given all the same copies of the videos given to the district attorney and had viewed them.  Since both sides had the videos Lewis saw no reason to present them to the district attorney.  Lewis did not think the videos supported a defense, but planned to cross-examine the witness if she gave any testimony that was inconsistent or taken out of context.  Although the video showed that the refrigerator was outside the house, it also showed that defendant's wife could be seen inside the house with defendant taking things.  Lewis also told the court that the defense investigator had interviewed the witnesses and suggested that defendant's children appeared to have been coached, and thus would not be good witnesses.  The defense investigator also interviewed the accountant and real estate agent and Lewis found nothing relevant in the interviews.  The fact that defendant was trying to buy another house had no relevance to the defense.

The court denied the motion for appointment of substitute counsel.  In open court defendant continued to argue that his

8

witnesses should be presented and that defense counsel should call them. The trial court indicated that the issue involved tactical decisions that had already been discussed in that day's *Marsden* hearing and previously in the March *Marsden* hearing. Defendant continued to argue that his counsel should discuss his witnesses and the video with him or permit defendant to speak to the prosecutor. When Lewis stated that they had been over the video, defendant argued that they had not, "not to the full extent." Because defendant constantly repeated his complaints and misrepresented things they had repeatedly discussed, Lewis asked the court to declare a doubt as to defendant's competency to stand trial. The court then suspended proceedings and ordered a psychiatric report.

### 2. *July 17, 2019*

After the psychiatric examination revealed no mental illness or disorder and proceedings were reinstated on July 17, 2019, defendant requested another *Marsden* hearing. During the hearing, defendant said that he wanted new counsel because he did not want to be represented by someone who thought he was crazy or incompetent. "I have no trust in him, and he has no trust in me. He doesn't listen to me. He doesn't respect me, and I don't need anybody on my side like that." Defendant also complained that he had repeatedly asked his counsel to get video to show that the witness was lying and to go deeper into his side of the situation. Defendant explained that the witness testified at preliminary hearing that the video did not exist, but defense counsel asked for only four minutes to cross-examine her.

Defendant then told the court that "[the agents] put this whole thing on television to the news saying that we were burglarizing a house. They made it . . . seem like we took jewelry

9

and money, like they made this whole big thing in order to deceive the police department and everything." Defendant explained that it got him evicted and that it was all a conspiracy. Defendant again told the court that he asked defense counsel to admit this new evidence and the new discovery of the video that shows that the witness lied, that the door was open, and that the house was uninhabited, so it could not have been burglary because there was no "breaking and entering." Defendant again complained that defense counsel would not call defendant's accountant and lender.

When asked by the court to address defendant's concerns, Lewis explained that the district attorney had all the evidence that defendant wanted him to present to them and yet they decided to prosecute him. Lewis noted that the video including defendant's comments about wanting to buy the house was presented at the preliminary hearing, and the witnesses defendant wanted to call had nothing to do with the facts of this case. He added that the house defendant had been trying to buy and his claim that Keller Williams breached the contract also had nothing to do with this case. Lewis explained that defendant believed that Roe was an agent of Keller Williams, and that Keller Williams was using this case to discredit him in relation to the breach of contract issue; but the breach of contract issue had nothing to do with this case.

Lewis also explained that when the investigator asked the children questions, they would pause and speak to someone in the background before responding, which adversely affected their credibility.

Defendant then requested to represent himself. He signed a *Faretta*[4] waiver form, which advised him of his constitutional rights and the dangers and disadvantages to self-representation, the charges and potential consequences, and the court's advice and recommendations. The form included defendant's signature certifying that he had read, understood, and considered all such advisements, and "freely and voluntarily gave up [his] right to have an experienced professional attorney represent [him]." After the court went over the form with defendant it accepted his waiver and granted his request.

### B. *No irreconcilable conflict*

Defendant argues that the trial court's July 17 ruling was an abuse of discretion because he and Lewis were embroiled in an irreconcilable conflict. Defendant contends that the asserted error is reversible per se because the trial court failed in its duty of inquiry by not addressing the breakdown in trust expressed by defendant. Defendant argues that the court was required to ask Lewis if he could do anything to regain defendant's trust or if he felt that the breakdown in the relationship could be repaired.

Defendant has provided no authority requiring the court to ask specific questions. A *Marsden* inquiry is adequate where, as here, the defendant is allowed to fully state his complaints and his attorney is asked in the defendant's presence to summarize his experience in criminal law and to address defendant's complaints. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1091.) The trial court was not required to specifically "'inquire into [defendant]'s complaints that he did not trust his appointed counsel.' . . . The fact that defendant did not trust his attorney

---

4       *Faretta v. California* (1975) 422 U.S. 806.

11

did not establish a conflict that required that appointed counsel be removed. "'[I]f a defendant's claimed lack of trust in, or inability to get along with, an appointed attorney were sufficient to compel appointment of substitute counsel, defendants effectively would have a veto power over any appointment and by a process of elimination could obtain appointment of their preferred attorneys, which is certainly not the law.'"" (*People v. Jackson* (2009) 45 Cal.4th 662, 688.)

We reject defendant's argument that a lack of trust based upon counsel's declaring a doubt about defendant's competence creates an irreconcilable conflict. Defendant contends that his position is supported by *People v. Taylor, supra*, 48 Cal.4th at pages 596-599, in which the trial court granted the defendant's sixth *Marsden* motion due to the defendant's asserted lack of trust, finding that a breakdown in the relationship resulted after counsel declared a doubt and then members of the defense team testified about their contacts with defendant at the competency hearing. Here, as the parties submitted the issue on the psychological report, there is no similarity to the facts in *Taylor*. And as the trial court's discretion in granting the *Marsden* motion was not challenged in in *Taylor*, there is no holding, as defendant's argument suggests, that counsel's declaring a doubt necessarily creates an irreconcilable conflict.[5]

---

[5] Nor does it demonstrate constitutionally inadequate assistance. ""'Both the due process clause of the Fourteenth Amendment to the United States Constitution and state law [(§ 1367)] prohibit the state from trying or convicting a criminal defendant while he or she is mentally incompetent.'"" (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 464.) Thus, counsel's declaring a doubt may be presumed to have been done in the client's best

Moreover, it is the defendant's obligation to make "'a sustained good faith effort to work out any disagreements with counsel . . . .'" (*People v. Clark* (2011) 52 Cal.4th 856, 913 (*Clark*).) "'[T]he trial court need not conclude that an *irreconcilable* conflict exists if the defendant has not tried to work out any disagreements with counsel and has not given counsel a fair opportunity to demonstrate trustworthiness.'" (*People v. Cole* (2004) 33 Cal.4th 1158, 1192.) Defendant argues here that a good faith effort to work out disagreements is demonstrated by his statement toward the end of the *Marsden* hearing that he "tried over and over again." Defendant offered nothing to show an effort to resolve the disagreement.

At one point defendant told the court that he did not trust Lewis because he had "asked him over and over again . . . to go deeper into [his] side of the situation." Defendant then again asserted at length that the witness lied; that the full video would have shown his innocence at the preliminary hearing; that counsel and the prosecution did not have the full video; and that counsel refused to call his witnesses, bring a motion to dismiss, negotiate a dismissal with the prosecutor, or call defendant's witnesses. Defendant concluded, "I'm asking him to work for me and do things I need to do, not the things that he need [*sic*] to do because it isn't him. And he talks to me like that, and it doesn't make sense." It is apparent that what defendant "tried over and over again" referred not to attempts to work out disagreements, but to have counsel agree to conduct the trial as defendant

---

interest. (Cf. *People v. Jernigan* (2003) 110 Cal.App.4th 131, 135-137.)

thought best, even after the trial court and counsel explained the problems with the strategy defendant advocated.

Defendant made it clear that he did not think public defenders in general were qualified. He told the court that he had asked over and over for someone more experienced and qualified like a "state appointed attorney" and not a public defender. When the court explained that the public defender's office was the state appointed attorney, defendant explained that he meant a private attorney or someone with a different type of office from the public defender. A breakdown in the attorney-client relationship due to defendant's prejudice does not entitle him to new counsel. (See *Clark, supra*, 52 Cal.4th at p. 913.) Furthermore, except for his distrust of public defenders, defendant's repeated complaints "were essentially tactical disagreements, which do not by themselves constitute an 'irreconcilable conflict.' [Citation] Indeed, a 'defendant does not have the right to present a defense of his own choosing, but merely the right to an adequate and competent defense.'" (*People v. Cole, supra*, 33 Cal.4th at p. 1192.)

Relying on *People v. Cruz* (1978) 83 Cal.App.3d 308, 317-318, defendant argues that "[t]he court failed in its duty of inquiry"; and citing *People v. Hill* (1983) 148 Cal.App.3d 744, 755-756, he argues that his decision to represent himself was thus compelled by the court's erroneous denial of his *Marsden* motion, rendering the judgment reversible per se. In *Cruz* and unlike here, however, the inquiry the trial court failed to make was to hold a *Marsden* hearing to allow defendant to describe the particulars of his claim and ask counsel to respond. (*Cruz, supra*, at pp. 317-318.) And also unlike here, the *Marsden* error in *Hill* was the denial of the motion based upon ex parte

14

communications. (*Hill, supra*, at p. 755.) As the California Supreme Court observed, neither *Cruz* nor *Hill* supports a claim of error where the defendant has been given "ample opportunity to explain the basis of his unhappiness and then denied the motion based in part on counsel's explanations of his conduct." (*People v. Abilez* (2007) 41 Cal.4th 472, 487-490.) Here, the *Marsden* inquiry was adequate, as defendant was allowed to fully state his complaints and his attorney was asked in the defendant's presence to summarize his experience in criminal law and to address defendant's complaints. (See *People v. Barnett, supra*, 17 Cal.4th at p. 1091.) In sum, the trial court did not fail in its inquiry.

Rather defendant's refusal to cooperate created his conflict with Lewis, and there is no indication in the record that Lewis was incompetent or would not have provided adequate representation if defendant had cooperated. Thus defendant's refusal to cooperate and a claimed lack of trust may create a conflict, "[b]ut that does not demonstrate an 'irreconcilable conflict' that would require the trial court to replace appointed counsel." (*People v. Michaels* (2002) 28 Cal.4th 486, 523.) We conclude that the trial court did not abuse its discretion in denying the motion.

## II. Validity of in pro. per. jury trial waiver

Defendant concedes that there is no dispute that while acting in pro. per., he expressly waived his right to a jury trial in open court. However, defendant contends that his waiver was invalid because his counsel never consented after defendant relinquished his pro. per. status.

"Under the federal Constitution and our state Constitution, a defendant in a criminal prosecution has a right to a jury trial."

(*People v. Sivongxxay* (2017) 3 Cal.5th 151, 166 (*Sivongxxay*); accord, U.S. Const., 6th Amend.; Cal. Const., art. I, § 16.) However, waiver of this right is permitted under both Constitutions. (*Duncan v. Louisiana* (1968) 391 U.S. 145, 158; Cal. Const., art. I, § 16.) However, in a criminal case, such waiver is permitted only with "the consent of both parties expressed in open court by the defendant and the defendant's counsel." (Cal. Const., art. I, § 16.)

Defendant recognizes that a defendant who represents himself in pro. per. is deemed to be his own counsel and fully capable of waiving his right to a jury trial. (*People v. Kranhouse* (1968) 265 Cal.App.2d 440, 449.) As defendant, acting as his own counsel, entered an express waiver, it cannot be said that his counsel did not enter an express waiver.

Defendant next asks that we decide, as a matter of first impression, that a jury trial waiver entered by a pro. per. defendant is automatically invalidated when the pro. per. status is relinquished and appointed counsel does not thereafter consent to the waiver. Defendant argues that such a decision is supported by the existing rule that defense counsel's objection will supersede a defendant's consent and prevent a waiver. (See *People v. Peace* (1980) 107 Cal.App.3d 996, 1007-1008.) Defendant then leaps to the conclusion that "[b]ecause defense counsel can supersede a client's wish for a bench trial by objecting to it, an attorney who is appointed to represent a client who waived his right to a jury trial when he was pro per must consent to that waiver in order for it to be valid."

Defendant has taken a leap too far. "It is well established that a waiver of a jury trial, voluntarily and regularly made, cannot afterward be withdrawn except in the discretion of the

16

court." (*People v. Chambers* (1972) 7 Cal.3d 666, 670 (*Chambers*), citing *People v. Osmon* (1961) 195 Cal.App.2d 151, 153, 154 & *People v. Melton* (1954) 125 Cal.App.2d Supp. 901.)  It follows that valid waiver, once entered, cannot simply be deemed invalid without seeking the discretion of the court.

## III.   Knowing, intelligent and voluntary jury trial waiver
### A.   *Knowing and intelligent*

Defendant contends that the judgment must be reversed because his jury trial waiver was not knowing and intelligent. He argues that this is shown by an inadequate advisement, the lack of a written waiver, his motive in wanting a court trial only because the prosecution wanted a jury trial, and defendant's change of mind after speaking to his new attorney.

"To be valid, a defendant's waiver of the right to a jury must . . . be 'knowing and intelligent, that is, ""made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it . . . .""""   (*People v. Weaver* (2012) 53 Cal.4th 1056, 1071-1072.)  "'[W]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case.'" (*Sivongxxay*, *supra*, 3 Cal.5th at p. 166, quoting *Adams v. U.S. ex rel. McCann* (1942) 317 U.S. 269, 278.)

The California Supreme Court has offered "some general guidance to help ensure that a defendant's jury trial waiver is knowing and intelligent, and to facilitate the resolution of a challenge to a jury waiver on appeal.  [The court] recommend[ed] that trial courts advise a defendant of the basic mechanics of a jury trial in a waiver colloquy, including but not necessarily limited to the facts that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may

17

participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence.  [T]he trial judge [should] take additional steps as appropriate to ensure, on the record, that the defendant comprehends what the jury trial right entails [such as] by asking the defendant directly if he or she understands or has any questions about the right being waived." (*Sivongxxay, supra*, 3 Cal.5th at pp. 169-170.)  The recommended colloquy is advisory, and "not intended to limit trial courts to a narrow or rigid colloquy." (*Id*. at p. 170.)

Here, the trial court adequately explained basic mechanics of a jury trial, including all the recommended advisements.  The court told defendant:

> "You absolutely have the right to a trial in this open matter.  You have the right to a jury trial if you choose to have a jury trial.  At a jury trial, the only way that you could be convicted of any of the charges against you or have any of those allegations found to be true would be if all 12 members of the jury, all 12 of them unanimously agree that the prosecution had proven the charge or the allegation to the standard of beyond a reasonable doubt.

> "At a jury trial you would have the right to confront and cross-examine the witnesses against you.  You would have the right to use the subpoena power of this court to subpoena witnesses into evidence on your behalf at no cost to you.  You have the right to take the stand and testify on your own behalf if you choose to do so.  You also have the right to remain silent, which means that nobody could force you to testify against yourself."

Asked whether he understood his right to a jury trial, defendant replied, "Yes, ma'am," and the court continued:

> "If you don't want a jury trial, you can have a court trial instead. At a court trial you have all of those same rights that I just discussed with you. The only difference would be that it would be the judge, not the jury, who would make the decision as to whether or not the prosecution had proven the charges or the allegations to that same standard of beyond a reasonable doubt. [¶] So their burden of proof doesn't change. Your rights don't change. The only difference is it will be a judge making that decision rather than 12 members of the community. [¶] Do you understand that, sir?"

Defendant replied, "Yes, ma'am."

Defendant claims that the advisements were inadequate because the court did not explain that he would be involved in selecting the jury through a voir dire process, that jurors must be impartial, or that the judge must excuse jurors who cannot be impartial. We disagree. The court advised defendant that he would be able to participate in jury selection, and there is no requirement that the court explain the voir process in detail. As Justice Corrigan observed in her concurring and dissenting opinion in *People v. Daniels* (2017) 3 Cal.5th 961 (*Daniels*), "there is no 'rigid formula or particular form of words that a trial court must use in taking a jury waiver,'" and the California Supreme Court has "rejected a rule 'that a jury waiver colloquy invariably must discuss juror impartiality, the unanimity requirement, or both for an ensuing waiver to be knowing and intelligent.'" (*Id.* at p. 1011 (conc. & dis. opn. of Corrigan, J.), quoting *Sivongxxay, supra,* 3 Cal.5th at pp. 169, 168.)

19

Quoting *Daniels, supra*, 3 Cal.5th at page 1002 (conc. & dis. opn. of Cuéllar, J.), defendant suggests that a jury trial waiver by a pro. per. defendant cannot be knowing unless the record indicates that he discussed the right with competent counsel. Defendant also complains that the waiver was never written. There are no such rules, although a lack of representation by counsel is one factor to be considered along with other circumstances. So long as the oral advisements are adequate, as we have concluded they were here, the waiver is effective. (See *id.* at pp. 994, 996-997 (conc. & dis. opn. of Cuéllar, J.).)

Defendant asserts that his motive shows lack of reflection. Defendant refers to comments made on June 3, after he first indicated his desire for a court trial and was told the prosecution was unwilling to waive a jury. He said, "I think I know why they want to have a jury trial. That's the reason why I don't want to have a jury trial, and I don't think that that's fair." Defendant's comments indicate illogical thinking, but not a lack of comprehension of what the jury trial right entails, particularly in light of the trial court's additional steps to ensure that defendant understood, by directly asking him whether he understood and whether he had any questions about the right being waived. (See *Sivongxxay, supra*, 3 Cal.5th at pp. 169-170.)

After the trial court asked defendant whether he understood and whether he had any questions, defendant said he understood, asked whether the court knew who the judge would be, and stated that he would prefer a judge who was unfamiliar with the case. Defendant thus showed that he knew that a judge would be deciding his guilt, and that he had reflected on the possibility of prejudgment based upon a knowledge of the case. In addition, when the court replied that it was possible but could

20

not be guaranteed, and asked whether that was okay, defendant replied "yes." Defendant said he had no more questions and again said "yes" when the court asked, "So, sir, do you understand your right to a jury trial and all those rights that go along with it." Defendant replied, "yes" again when the court asked, "And at this time, sir, do you give up your right to a jury trial agreeing that instead you will have a court trial?" Defendant also agreed to have a court trial as to the prior conviction allegation. We are satisfied that defendant's waiver was knowing and intelligent.

### B.    *Voluntary*

Defendant claims that the waiver was not voluntary because the trial court "coerced" the prosecution into agreeing to the waiver and promised defendant a benefit to induce him to waive a jury trial.

In addition to being knowing and intelligent, a jury trial waiver must be voluntary "''''''in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'''''''" (*People v. Weaver, supra*, 53 Cal.4th at pp. 1071-1072.) Defendant claims that the waiver was a product of coercion by the trial court because, he argues, "there is no doubt that the court coerced the People into waiving a jury trial."

Our review of the record does not support defendant's assertion that the trial court coerced the prosecution into waiving a jury trial. Defendant first requested a court trial on June 3, 2019, after defendant's *Marsden* motion was denied when he was still represented by Lewis, and the case was transferred to another department for trial. The prosecutor was not willing to waive a jury, and the court indicated it would order a jury panel. Defendant pressed the issue, and the court explained that the

21

prosecution also had a right to a jury trial. After further discussion regarding defendant's unhappiness with defense counsel's trial strategy, proceedings were suspended pursuant to section 1368.

On July 17, 2019, after criminal proceedings were reinstated and another *Marsden* hearing was conducted, the trial court granted defendant's request to represent himself. On July 18, the trial court appointed temporary standby counsel and asked defendant whether he still wanted a court trial. Defendant said he did, and the court replied that if defendant wanted a court trial, it would "strongly suggest to the People that they also go along with that. So if I need to talk to the head deputy . . . , I can do that, but it is up to you. You have the right to a jury trial, so does the prosecutor. But if you are willing to give up that right, I am willing to try to pressure them to give up their right as well." Defendant said he would "prefer to have a judge trial." Later that day, with the head deputy in court, defendant confirmed that he still wished to waive his right to a jury and have a court trial if the prosecution agreed.

Despite saying it would "try to pressure" the prosecutor and would "strongly suggest to the People that they also go along," there is nothing in the record showing that the court did more than to say the following: "All right. Are the People willing to waive their right to a jury trial and have a court trial in this matter as well?" When the deputy said, "Yes," the court gave defendant the appropriate advisements and took a waiver, as we discussed in part III.A., above. There is no evidence in the record of any pressure placed on the prosecutor.

Relying on *People v. Collins* (2001) 26 Cal.4th 297, 309 (*Collins*), defendant also contends that the trial court used the

22

promise of a benefit to induce defendant to waive his right to a jury trial. "[T]he state may not punish a defendant for the exercise of a constitutional right, or promise leniency to a defendant for refraining from the exercise of that right." (*Id*. at p. 306, citing *United States v. Jackson* (1968) 390 U.S. 570, 580-582.) Thus, a jury trial waiver is considered involuntary if it has been induced, intentionally or unintentionally, by the trial court's offer of a benefit. (*Collins, supra*, at p. 309.)

In *Collins*, while giving the defendant advisements before taking his jury trial waiver, the defendant said, "'I was told that it would—that it was some reassurance or some type of benefit.'" (*Collins*, *supra*, 26 Cal.4th at p. 302, italics omitted.) The court said that it had "'indicated to counsel . . . that there might well be a benefit in it. Just by having waived jury, that has some effect on the court. Do you understand that? By not taking up two weeks' time to try the case, but rather giving—just having it in front of a judge alone.'" (*Ibid*., italics omitted.) When defendant confirmed that this was his understanding as well, the court said, "'I didn't specify and I'm not specifying that there's any particular benefit, but that by waiving jury, you are getting some benefit, but I can't tell you what that is because I don't know yet.'" (*Ibid*., italics omitted.) The California Supreme Court held: "The circumstance that the trial court did not specify the nature of the benefit by making a promise of a particular mitigation in sentence, or other reward, does not negate the coercive effect of the court's assurances. [Citation.] The inducement offered by the trial court to defendant, to persuade him to waive his fundamental right to a jury trial, violated defendant's right to due process of law." (*Id.* at p. 309.)

In this case, there was no express or implied promise of any reward, specified or unspecified, or any suggestion that there was a benefit to be gained by waiving a jury trial. Defendant argues that the court's offer to try to pressure the prosecutor and to speak to the head deputy induced defendant into believing that he was receiving a benefit by having a court trial, and that benefit was to have something the People did not want. Defendant's argument is based upon a comment that he made after he had already decided he wanted a court trial and six weeks before the court said that it would "try to pressure" the prosecutor. Here, unlike any part of the colloquy in *Collins*, the court made no reply to defendant's comment, did not refer to it, and did not suggest or imply that defendant would benefit by the prosecutor's waiver. The record does not support defendant's claim.

## IV. Denial of motion to withdraw jury trial waiver

Defendant contends that the trial court abused its discretion in denying his motion, made on the day of trial, to withdraw the jury trial waiver and proceed to jury trial, and that the error resulted in a violation of his right to a jury trial guaranteed by the Sixth Amendment to the United States Constitution and article I, section 16 of the California Constitution.

On January 6, the case was called by Judge Chung, who stated: "I was told that [defendant] waived his right to a jury trial. It is a court trial. But now he wants a jury trial; is that right?" Defendant's attorney replied that was correct, that defendant had "allegedly waived" his right to a jury trial when he was pro. per., but now wanted a jury trial. Counsel explained that he had reviewed the transcripts, read the advisements, but

24

did not see a response from defendant.[6] He added that he told the prosecutor on Friday or "over the weekend" that defendant now wanted a jury trial.

The prosecutor told the court that she had learned only that morning that defendant was going to seek to rescind the jury trial waiver. She also represented that she had been in court at the time of the waiver and that the judge "took a very full, express waiver and the defendant did expressly waive his jury trial rights." The prosecutor opposed the request because she was ready for trial, which had been continued for multiple reasons, the victim had come to court on four separate occasions since April 2019, and it would cause her great inconvenience to have to return again. In addition, she had prepared for a bench trial, approaching the case much differently than she would have for a jury trial, and had called off a witness based upon a stipulation. The trial court noted that Roe looked distressed, asked her whether it would cause her "a lot of distress" to have to come back tomorrow, and she said it would. The prosecutor explained that as a sales representative, Roe traveled approximately 300 miles per day for her work and has had to reschedule appointments.

The trial court denied the "last minute request for a jury trial." The court explained that it had balanced several factors, including defendant's constitutional right to a jury trial, witness inconvenience and hardship, Roe's distress, and the prosecutor's

---

[6] The record reflects that after the judge gave defendant advisements regarding jury trial, she asked defendant, "And at this time, sir, do you give up your right to a jury trial agreeing that instead you will have a court trial?" Defendant replied, "Yes, ma'am," and the prosecutor then waived a jury trial.

25

reliance on the waiver in preparing for a court trial rather than a jury trial.

Defendant refers to *Chambers*, which held: "Absent special circumstances the court may deny a motion to withdraw such a waiver especially where adverse consequences will flow from the defendant's change of mind. In exercising its discretion the court may consider such matters as the timeliness of the motion to withdraw the waiver, the reason for the requested withdrawal and the possibility that undue delay of the trial or inconvenience to witnesses would result from granting the motion." (*Chambers, supra*, 7 Cal.3d at pp. 670-671.) Defendant argues that his waiver was not "regularly made" and that there were "special circumstances" that mandated granting the request, because defendant's jury trial waiver was made without benefit of counsel and entered without counsel's consent (contentions we rejected in part II above), and because defendant's later change of mind was motivated by advice of counsel.

Once a defendant who appeared in pro. per. "has engaged counsel who is of the opinion that the defendant's interests will be furthered by a jury trial rather than a trial by judge, the constitutional concern that the consent of the lawyer, as well as of the defendant, to the waiver be secured should be given consideration in ruling upon a subsequent application of defendant's counsel to withdraw the waiver." (*People v. Melton, supra*, 125 Cal.App.2d Supp. at p. 906.) "In such cases, where following the employment of counsel by the defendant, a *timely* demand has been made for a jury trial, the court should permit a revocation of the waiver and grant a trial by jury." (*Ibid.*, italics added.) Defendant's request to withdraw his waiver was not timely. It was made on January 6, 2020, almost four months

26

after the new attorney was appointed to represent defendant on September 9, 2019.

Defendant claims that both he and his attorney had requested a withdrawal of the waiver "months prior," although he acknowledges that the record prior to January 6, 2020, does not reflect a request to withdraw the waiver or counsel's advice. Defendant asserts that its existence is demonstrated by representations made in the *Marsden* hearing, which was conducted on January 6 after the trial court denied the motion to withdraw the waiver. We disagree. In that *Marsden* hearing, defendant claimed that when he obtained a new attorney, he was told that he should have a jury trial, and "we let them know way ahead of time on the 19th"; and that he told Judge Blanchard that he wanted a jury trial. Defense counsel represented in the January 6 *Marsden* hearing that he had told defendant "before the holiday" that they had to have a jury trial, but he did not say what holiday.

In addition, although defendant claims that both he and his attorney had tried to withdraw the waiver "months prior," defendant also asserts that it is unclear when his attorney knew that a court trial had been scheduled. Defendant also suggests that the tardiness of the request for jury trial was the trial court's fault, because after his new attorney's appointment, "the record repeatedly references the case being scheduled as a jury trial."

We reject defendant's suggestion that the record is unclear as to when new counsel should have known that a court trial had been scheduled. Furthermore, defendant exaggerates the record as "repeatedly" referencing a jury trial. The trial court granted defendant's request to represent himself on July 17, and the following day the court appointed temporary standby counsel,

27

who was present in court. On August 16, 2019, defendant's new attorney was appointed, and on August 21, 2019, the trial court "set the court trial date for September 9th." The August 21 minute order states: "Matter is trailed to September 9, 2019, . . . for court trail [*sic*] . . ."; and "Next scheduled event: [¶] 09/09/19 830 AM court trial." On September 9, counsel was again present in court when the trial court announced, "We're here for jury trial in the case ending in 866." The court then explained to defendant that new charges had been filed against him, and then said, "[W]e're here for jury trial—or I'm sorry—for court trial . . . ." At that time, defendant asked to give up his pro. per. status and have counsel appointed. After the motion was granted and counsel was appointed to represent defendant, the court said, "[W]e are set for a court trial today," and asked, "Is the defense ready for court trial?" Counsel replied that the defense was not ready and asked for a continuance. At the pretrial hearings of November 5, 2019, and again on November 18, when both sides agreed to January 6, 2020, the trial court again misspoke, by referring to a jury trial.

There was no correction by the court on these last two occasions, and the minute order of November 18 states, "The matter is set for jury trial on January 6, 2019 [*sic*] as day 6 of 10." Neither counsel brought the obvious errors to the court's attention, and defendant's attorney has never claimed that he was misled by the trial court's having misspoken on two occasions. Moreover, counsel's statements on January 6, 2020, indicate that he was not misled. When court called the matter for trial on that date and said that defendant had indicated that he now wanted a jury trial, counsel replied that was correct, and he had informed the prosecutor over the weekend that defendant

28

wanted a jury trial. In the *Marsden* hearing, counsel told the court that he had told defendant "before the holiday" that they had to have a jury trial. Thus, counsel was aware by August 21, 2019, that defendant had waived a jury trial, and had known for at least several days prior to the weekend that the case was scheduled for a court trial on Monday, January 6, but waited until the day of trial to make the motion.

The motion was untimely as it was made the first day of trial, which had been postponed twice since June 2019. No special circumstances have been presented. The only reasons given for the request to rescind defendant's waiver was that on advice of counsel defendant wanted a jury trial, and it was not clear to defense counsel that defendant had made an express waiver.

We conclude that denial of defendant's untimely motion to withdraw his jury trial waiver was not an abuse of discretion, as the trial court weighed "the reason for the requested withdrawal and the possibility that undue delay of the trial or inconvenience to witnesses would result from granting the motion," and there are no "special circumstances which would compel the court to grant the motion notwithstanding delay of the trial." (*Chambers*, *supra*, 7 Cal.3d at p. 671.)

Finally, defendant claims that the trial court abused its discretion in placing emphasis on the inconvenience to witness Roe, as demonstrated by the court's comment, "I think if we didn't have that very real hardship to the victim, I would allow the defendant to change his mind and ask for a jury trial." Defendant suggests that there was in fact no hardship on the witness and no great distress as she claimed, as shown by her "unannounced" appearance in court on the second day of trial.

Defendant's testimony was given on January 7, and Roe then testified on rebuttal. Defense counsel moved for a mistrial when he saw Roe in the audience, arguing that basing the opposition on her inconvenience in having to come back another day was a "material misrepresentation." The prosecutor explained that she told Roe to return only after she learned that defendant would be testifying on January 7. The trial court disagreed with defendant, explaining that it was part of the dynamic and challenges of a trial that a witness who appeared to be finished sometimes has to be called back.

The court also reminded counsel that in balancing the interests , it had considered not only the inconvenience and hardship to the witness, but also the People's right to a speedy trial and the prosecutor's strategic decision to plot the case a certain way for a court trial, as opposed to a jury. We discern no abuse of discretion in the trial court's weighing of the circumstances.

## V.     Unauthorized sentence on counts 2, 3, and 4

Defendant contends that the terms imposed on counts 2, 3, and 4 were unauthorized. Respondent agrees.

Defendant was convicted of soliciting, inducing, or encouraging a minor to commit a felony in violation of section 653j, as alleged in counts 2, 3, and 4. The court chose count 2 as the base term and sentenced defendant to the middle term of five years, doubled to 10 years as a second strike. The trial court imposed the same term as to each of counts 3 and 4 and then stayed the terms pursuant to section 654.

The sentencing range for a violation of section 653j, subdivision (a), is three, five, or seven years. However, subdivision (b) provides: "In no case shall the court impose a

30

sentence pursuant to subdivision (a) which exceeds the maximum penalty prescribed for the felony offense for which the minor was solicited, induced, encouraged, or intimidated to commit." In this case, that felony offense was second degree burglary, as charged in count 1. The maximum penalty for second degree burglary is three years. (§§ 461, subd. (b), 1170, subd. (h).) Thus, the maximum term authorized for each violation of section 653j was three years, doubled to six years as a second strike.

The terms imposed here were thus unauthorized, and the reviewing court may "'correct a sentence that is not authorized by law whenever the error comes to the attention of the court.'" (*In re Harris* (1993) 5 Cal.4th 813, 842, disapproved on another point in *Shalabi v. City of Fontana* (2021) 11 Cal.5th 842, 854, fn. 5.) In addition, as the parties agree, it is unnecessary to remand for resentencing because the court imposed the maximum sentence possible. (*People v. Buycks* (2018) 5 Cal.5th 857, 896, fn. 15.) We will thus modify the judgment to reflect the authorized maximum sentence. (See *People v. Lopez* (2019) 42 Cal.App.5th 337, 342.)

**DISPOSITION**

The sentence is corrected by modifying the prison terms imposed, as follows: In count 2, three years is imposed as the base term, doubled to six years, as a second strike; as to each counts 3 and 4, the middle term of three years, doubled to six years, is imposed, with execution stayed pursuant to section 654. As to count 1, the term remains the high term of three years, doubled to six years as a second strike, and also stayed pursuant to section 654. The superior court is directed to prepare a corrected abstract of judgment reflecting these changes and

31

forward a certified copy to the Department of Corrections and Rehabilitation.

As modified and in all other respects the judgment is affirmed.

_____
CHAVEZ, J.

We concur:

_____
LUI, P. J.

_____
HOFFSTADT, J.